FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 29, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFERY D., | No. 1:21-CV-03143-JAG |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 11, 15.  Attorney D. James Tree represents Jeffery D. (Plaintiff); Special Assistant United States Attorney Shata L. Stucky represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2) as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline.  ECF No. 17.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for an award of benefits.  42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

# I.    JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on April 5, 2017, alleging disability since March 15, 2017. Tr. 284, 429-42.  The applications were denied initially and upon reconsideration.  Tr. 308-11, 317-29.  Administrative Law Judge (ALJ) Timothy Mangrum held a hearing on October 19, 2018, Tr. 150-77, and issued an unfavorable decision on January 11, 2019. Tr. 281-02.  Plaintiff requested review by the Appeals Council, and in an order dated April 2, 2020 the Appeals Council vacated the hearing decision and remanded the case to the ALJ.[1]  Tr. 305-06.  ALJ Mangrum held a remand hearing on December 17, 2020,[2] Tr. 178-08, and issued another unfavorable decision March 9, 2021.  Tr. 12-39.  Plaintiff requested review

---

[1] The Appeals Council (AC) found the ALJ failed to provide a detailed assessment of the Plaintiff's mental work related abilities, stated the psychological mental consultant's opinions were partially persuasive but failed to provide rationale for finding the portion of the mental opinion limiting Plaintiff to simple three step tasks unpersuasive, requiring further evaluation of Plaintiff's mental residual functional capacity; and the decision did not evaluate Plaintiff's obesity in accordance with SSR 19-2p. Tr. 305-06.  The AC remanded the case to the ALJ to evaluate the severity and possible effects of Plaintiff's obesity impairment; and to further consider the Plaintiff's maximum mental residual functional capacity, instructing the ALJ to provide rational with specific references to evidence of record in support of assessed limitations, and in doing so to evaluate prior administrative medical findings pursuant to the provisions of the new medical rules.  *Id*.

[2] At the 2020 hearing Plaintiff requested a closed period of disability from his alleged onset date thorough December 31, 2018, as he had returned to work at substantial gainful activity levels as of that date.

by the Appeals Council, and on September 22, 2021, the Appeals Council denied the request for review. Tr. 1-6.  The ALJ's March 9, 2021 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on October 27, 2021.  ECF No. 1.

## II.    STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

## III.    SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show: (1) the claimant can make an adjustment to other work and (2) the claimant can perform other work that exists in significant numbers in the national economy.  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## IV.    ADMINISTRATIVE FINDINGS

On March 9, 2021, the ALJ issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act.  Tr. 12-39.

At **step one**, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and that he did not engage in substantial gainful activity (SGA) from his alleged onset date until the second quarter of 2019.  Tr. 17-18.  The ALJ then found that "[T]here has been a continuous 12-month period(s) during which Plaintiff did not engage in SGA and the remaining findings address the period(s) the [Plaintiff] did not engage in [SGA]."  Tr. 18.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: left eye blindness, residuals from hip injury, traumatic brain injury, and neurocognitive disorders, and somatic dysfunction of upper extremity.  *Id.*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

At ***step three***, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 18-19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform light work, but with the following limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. Balancing and stooping are limited to frequent. [Plaintiff] can occasionally kneel, crouch, or crawl. Handling bilaterally is limited to frequent and overhead reaching is limited to occasional. Environmental limitations include avoiding concentrated exposure to hazards and excessive vibrations. Visual limitations include only occasional depth perception. [Plaintiff] can perform work that does not require frequent written communications. [Plaintiff] can perform simple work related instructions, tasks, and decisions with a GED level of no greater than 2. [Plaintiff] can handle few workplace changes and will be off task/unproductive 5% of the workday due to effects of his impairments.

Tr. 20.

At ***step four***, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 28.

At ***step five***, the ALJ found that, based on the testimony of the vocational expert and considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of warehouse checker, garment sorter, production assembler, and injection molding-machine tender.  Tr. 30.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.  *Id*.

## V.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated Plaintiff's subjective complaints; (2) whether the ALJ properly evaluated the medical opinion evidence; and (3) whether the ALJ conducted a proper step five analysis.  ECF No. 11 at 2.

## VI.    DISCUSSION

**A.    <u>Subjective complaints.</u>**

Plaintiff contends the ALJ erred by not properly assessing Plaintiff's symptom complaints.  ECF No. 11 at 3-12.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  Second, "[i]f the claimant meets the

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why the ALJ discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 22. Plaintiff argues the ALJ failed to provide specific, clear and convincing reasons to not fully credit Plaintiff's allegations. ECF No. 11 at 3-12. Defendant argues substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints. ECF No. 15 at 3-9. The Court finds the ALJ failed to offer clear and convincing reasons for disregarding Plaintiff's subjective complaints.

### 1. *Inconsistent with Objective Findings.*

The ALJ determined Plaintiff's allegations were inconsistent with objective findings. Tr. 22-25. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The objective medical evidence, however, is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ found Plaintiff's allegations were "out of proportion with the workup findings," that treatment notes did not corroborate Plaintiff's allegations of disabling symptoms, and that physical examinations did not support the dysfunction alleged by Plaintiff. Tr. 22-23. Plaintiff contends the ALJ erred in finding Plaintiff's objective physical findings insufficiently severe because the ALJ: provided a selective recitation of evidence that tended to support the ALJ's conclusions while ignoring relevant evidence as to Plaintiff's injuries and pain; made no mention of many of Plaintiff's injuries; and improperly discounted Plaintiff's reports of continued cognitive and physical impairment during the period at issue because Plaintiff responded to treatment and slowly improved from catastrophic injuries to the point he was able to return to work at the end of the period at issue. ECF No. 11 at 4-8. Defendant contends the ALJ's findings are supported by substantial evidence. ECF No. 15 at 3-9.

The Court finds the ALJ failed to discuss relevant evidence and records showing the extent of Plaintiff's injuries, including evidence of serious physical injuries such as a brain injury on the alleged onset date. For the reasons discussed below the Court finds the ALJ harmfully erred as he failed to provide an accurate description of Plaintiff's injuries, selectively presented evidence Plaintiff was doing better without analysis or discussion of relevant evidence as to the extent of

his injuries, misstated the record including hearing testimony, and generally minimized Plaintiff's injuries, resulting in mischaracterization of the record.

The ALJ provides a brief summary of the medical evidence relating to Plaintiff's accident, noting that "on the alleged onset date, [Plaintiff] was involved in a serious motor vehicle accident in which he briefly lost consciousness and sustained physical injuries that required significant care." Tr. 22 (citing Tr. 1171). The ALJ noted "Plaintiff was hospitalized after his motor vehicle accident, after suffering multiple fractures to his left hip and vision loss related to his left eye laceration." Tr. 23 (citing Tr. 606-72). Later in the decision, the ALJ noted "although [Plaintiff] sustained a traumatic brain injury following a motor vehicle accident . . . his recovery occurred fairly quickly. Notably, he was able to follow simple commands once he woke up from a brief loss of consciousness at the accident site. Tr. 24 (citing Tr. 1171).

Descriptions of Plaintiff's accident throughout the administrative record show he was involved in a high-speed collision with a semi-truck on March 15, 2017, requiring "prolonged extrication" from Plaintiff's vehicle, and resulting in multiple traumatic injuries/polytrauma including multiple facial fractures, including left orbital wall fractures and eye/nerve damage, subarachnoid hemorrhage and subdural hematoma, left acetabular fracture, and cervical (C7) fracture. *See, e.g.*, 1552, 1180, 1206, 1223, 1225. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

The ALJ provides little information about Plaintiff's head injuries in the decision, noting he "briefly lost consciousness" and concluding later in the decision "[n]otably, he was able to follow simple commands once he work up from

a brief loss of consciousness." Tr. 22, 24 (citing Tr. 1171). Records show, however, that while Plaintiff was initially "mentating in the field . . . he was eventually intubated for decreased mentation" and that while he was initially oriented, he experienced reduced level of alertness along with agitation; upon neurological exam, he was found to have intercranial bleed as well as polytrauma and transferred from his local hospital via to Harborview Medical Center in Seattle for higher level of care. *See* Tr. 1170-71, 1195, 1206, 1222. Imaging showed head injuries including a small right subdural hematoma, small left frontal subarachnoid hemorrhage, left frontal parenchymal hemorrhage, left orbital fractures and left frontal sinus fracture; he also had left comminuted acetabular (hip) fracture with dislocation of the left femur, and cervical transverse process fracture at C7, as well as a small left lung contusion. Tr. 1171. Due to the complexity of his injuries and "polytrauma he require[d] critical care level medical care" and multiple services were consulted including general surgery, neurosurgery, craniofacial/plastic surgery, ophthalmology and orthopedic surgery. Tr. 1212-13. He was admitted to the neuro intensive care unit. Tr. 1178, 1191, 1213.

Records from his treating rehabilitation medicine specialist show at least moderate TBI with loss of consciousness of 31 to 59 minutes, with resultant cognitive and neurobehavioral dysfunction following brain injury. *See, e.g.*, Tr. 907-908, 1349. Notes from day nine of his hospitalization show delirium status post TBI with agitation. Tr. 1309. A cognitive evaluation March 24, 2017 noted Plaintiff reported a headache and feelings of confusion since "waking up" along with "intermittent emotional swells" and concern about his vision; he asked, "what happened to this eye?" Tr. 1312. Nursing notes show "patient has been demonstrating some perseveration and short-term memory difficulties surrounding recent details of his care/injury." Tr. 1312. Records from March 24, 2017 show he was alert, confused, cooperative, and perseverative. Tr. 1326. While he was able

to follow 1-2 step commands, and appeared oriented, he also showed "poor awareness of time reference" and memory impaired executive functions. *Id.* He had difficulty with awareness of errors, decreased insight into deficits, decreased awareness of time, failure to grasp a main idea, decreased attention to detail, and he showed delayed response time in communication. *Id.* Inpatient physical/occupational therapy was indicated two to four days a week for ADL training, cognitive skills development, functional mobility training, and vision screen. Tr. 1327. Another nursing note March 24 indicated he became agitated and required "nonviolent restraint order" during his hospitalization. Tr. 1328.

The ALJ also noted Plaintiff suffered vision loss "related to his left eye laceration." Tr. 23. This is an inaccurate description of Plaintiff's injuries, including skull and facial fractures which resulted in nerve damage and left eye blindness; emergency ophthalmology consult upon hospital admission found an optic canal fracture with bony compression of the optic nerve, with concern for traumatic eye neuropathy. Tr. 1183-84. Initially, the specialist noted he could not perform visual acuity exam to find out if Plaintiff was blind, as he was unconscious, and decided to delay surgical repair until he was awake, noting surgery could risk further nerve damage and blindness; they explained, however, that based on "based on radiographic findings visual prognosis [left eye] is poor." *Id.* While the ALJ notes Plaintiff "endorsed left eye blindness" and "reported no vision" or vision loss in his left eye related to a laceration, and Defendant contends Plaintiff's "activities undercut his allegations about his vision," ECF No. 15 at 5, records show he is blind in his left eye due to his injuries, including left wall orbital fracture and nerve damage including optic nerve with "left 3rd, 4th and 6th cranial nerve injuries." *See, e.g.*, Tr. 1183-84, 1428-29.

Plastic surgery consults upon hospitalization indicated they were consulted due to craniofacial fractures, particularly numerous fractures of his left skull and

orbit.  Tr. 1228.  They noted Plaintiff was intubated and on a ventilator, and observed a large laceration with exposed muscle and bone involving his left brow, upper lid, and lateral orbit.  Tr. 1227.  They noted ophthalmology had decided against immediate surgery as it was too risky, but that he would "still require an operation for his skull and facial fractures" and that this was anticipated "in the next 1-2 weeks as swelling abates."  Tr. 1228.  They repaired a facial laceration at that time, however, noting "extensive laceration through his left brow and lateral orbit" with recommended IV antibiotics for open fracture, head of bed elevation, washing out the wound at that time in the ER, sinus precautions, and "[cerebral spinal fluid] leak watch."  Tr. 1228.

Repeat CT imaging of Plaintiff's brain showed stability of intracranial bleeding, and neurosurgery decided against operative intervention at that time. Tr. 1153.  His C7 transverse fracture was also noted to be stable and did not require acute intervention.  Tr. 1213.  Imaging showed left acetabular dislocation and fractures with associated hematoma, and orthopedic surgery attempted bedside reduction of Plaintiff's hip dislocation without success; he was placed in traction at that time pending surgical repair.  *Id*.  Plaintiff underwent open reduction internal fixation (ORIF) of his left posterior wall acetabular fracture on March 16, 2017. Tr. 1310, 1317.  He also underwent ORIF of the left orbit, frontal sinus reconstruction with mesh placement, and complex repair of forehead and eyelid laceration on March 23, 2017.  Tr. 1315, 1317, 1341, 1348.  Records show blood transfusion for anemia and acute blood loss.  Tr. 1309.

Plaintiff alleges inability to work due to pain and cognitive issues status post serious injuries sustained in an accident on his alleged onset date.  In finding Plaintiff's allegations "out of proportion with workup findings," the ALJ did not discuss many of his injuries and cited minimal and peripheral findings from Plaintiff's extensive injuries, hospitalization, and rehabilitation in March and April

2017.  Tr. 22.  The ALJ noted one imaging study related to his head and brain injuries in support of his finding Plaintiff's allegations were out of proportion to objective evidence, noting "for example, a CT angiogram does not show convincing evidence of traumatic vascular injury." *Id*. (citing Tr. 1183).  Records show, however, that this was one of numerous imaging studies performed upon hospitalization, including CT scans of his head and brain, which showed intracranial hemorrhages related to his skull fractures, and that CT angiogram was done more than once to rule out traumatic aneurysm/worsening bleed.  *See, e.g.*, Tr. 1291-92.  The ALJ does not mention any of the other imaging, the fact that his traumatic brain injury included skull fractures and intracranial bleeding, his multiple facial/cranial fractures and subsequent surgical repair, or the weeks of hospitalization and inpatient rehabilitation for polytrauma, which is referenced in detail throughout the records; and followed by prolonged outpatient physical rehabilitation.  Tr. 21-24; *see, e.g.*, Tr. 1105, 905, 1414.

Additionally, the ALJ misstates portions of the record, resulting in further minimization of Plaintiff's injuries.  For example, the ALJ found that "at the 2018 hearing [Plaintiff] testified that at the time of his alleged onset disability he was involved in a motor vehicle accident and spent a week in the hospital."  Tr. 21.  This is incorrect.  In fact, at the 2018 hearing the ALJ discussed with Plaintiff the fact Plaintiff was "transported to Harborview Hospital over in Seattle, and you were there for about three weeks."  Tr. 155.  Plaintiff also testified he did not remember anything about his hospitalization until "after about a week of being there," and records show post traumatic amnesia estimated at seven days due to his injuries.  Tr. 156; *see, e.g.*, Tr. 1089.  While the ALJ's decision notes Plaintiff's hip fractures, finding that Plaintiff had "injured his hips and had to use crutches for about 3 months and endorsed left eye blindness," medical records, along with Plaintiff's testimony, show that Plaintiff then required a cane for another three

months to assist with standing and walking as he recovered from hip fractures and dislocation with ORIF repair, with subsequent months of intensive physical therapy to assist in weightbearing, range of motion, strength, normalizing gait and body mechanics.  *See, e.g.*, Tr. 157, 918, 1294, 1366.

Although the ALJ addressed Plaintiff's hip injury in the decision, the ALJ failed to discuss objective evidence of the extent of all the injuries for which Plaintiff is alleging disability.  In focusing on findings unrelated to Plaintiff's injuries and failing to discuss the extent of his injuries, the ALJ's characterization of the medical record is not supported by substantial evidence.  The ALJ noted Plaintiff "noted some hip stiffness after sitting for a while just a couple of months after his injury, in May 2017, but indicated that his pain had progressively improved." Tr. 23 (citing Tr. 869).  The orthopedic records the ALJ cites here, however, also indicate that Plaintiff was applying or disability "due to his multiple injuries and ability to return to work." Tr. 869.  Objective findings upon physical exam included reduced strength and range of motion in his hip; the orthopedist noted he was still only weightbearing as tolerated and instructed him to work on balance and strength. Tr. 870.  The ALJ also found that Plaintiff had "good range of motion except for some limited left hip range, with full strength, and normal posture." Tr. 23 (citing Tr. 907).  However, at the same visit in July 2017, Plaintiff reported he could only walk for three to four minutes before needing to take a break due to left hip pain. Tr. 906.  The ALJ then concludes "it was noted he was doing well from a surgical standpoint with a good range of motion . . . and from an orthopedic standpoint was healed." Tr. 23 (citing Tr. 1447).  This reference, however, is taken is from a much later April 2019 appointment with orthopedic surgery, which is after Plaintiff's requested period of disability; at that time his surgeon noted he was two years status post ORIF and also explained "of note, he sustained a significant traumatic brain injury . . . and is followed by rehabilitation

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

medicine.  They have cleared him to work 4 hours a day, 20-pound weightbearing instruction." Tr. 1446-47.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings.  *See, e.g., Holohan*, 246 F.3d at 1207-08 (9th Cir. 2001).  Here, the ALJ selectively cited portions of the record showing milder findings while failing to discuss evidence of continuing pain, difficulty sitting and standing for long periods, and persistent cognitive issues throughout the period at issue.  The ALJ's incomplete and highly selective summary of medical evidence, misstatement of the record, and conclusory statements fail to meet the burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 644, 675 (9th Cir. 2017) (internal citations omitted).  In citing portions of the record that show milder examination findings while the longitudinal record shows more mixed results, the ALJ's characterization of the record is not supported by substantial evidence.

The ALJ's conclusion that Plaintiff's symptom testimony is not consistent with objective medical evidence is therefore not supported by substantial evidence and this is not a clear and convincing reason to discount Plaintiff's symptom claims.

## 2. *Inconsistent Statements/Discrepancies.*

The ALJ found Plaintiff's statements were inconsistent with the longitudinal evidence and that other discrepancies in the record detracted from the reliability of Plaintiff's self-report. Tr. 23, 25.  An ALJ may consider inconsistent statements by a claimant in assessing his subjective statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  Here, ALJ found Plaintiff's reports of pain inconsistent with the evidence, finding, for example, that "Plaintiff was

hospitalized after his motor vehicle accident, after suffering multiple fractures to his left hip and vision loss related to his left eye laceration," but "just a month after the incident, the [Plaintiff] said that the severity of his left hip pain was at only a 4 on a pain scale of 10 and "he told providers his hip was feeling ok." Tr. 23 (citing Tr. 611, 620). In terms of his hip injury, records from this visit with physical therapy also show Plaintiff was unable to ambulate without crutches at that time, required assistance with stretching exercises from his wife, had very limited range of motion in his hip, and the physical therapist noted "signs and symptoms consistent with TBI with polytrauma and recent left hip ORIF." Tr. 611-12, 620. The ALJ noted while [Plaintiff] reported no vision in his left eye, he acknowledged reduced swelling and increased movement." Tr. 23. As discussed *supra*, the ALJ's characterization of Plaintiff's vision loss and head injury is insufficient, as Plaintiff suffered injuries including intracranial bleeding, facial and skull fractures, and his left eye injury(s) included left optic canal fracture with bony compression of the optic nerve and cranial nerve damage resulting in left eye blindness. *See e.g.*, Tr. 1178, 1180, 1183.

The ALJ also pointed to a November 2017 appointment where Plaintiff reported that he was able to walk about half a mile before noticing some left hip soreness, along with one line from a January 2018 physical therapy report showing Plaintiff reported he had been "doing some jogging without pain and was feeling good," concluding that "records around that time and since indicate that he was increasing his functioning overall with improved lower extremity strength and range of motion." Tr. 23 (citing Tr. 980,[3] 1044). Physical therapy notes, however,

---

[3] This page cited to is A. Ford, Psy.D's September 2017 Memory Assessment and Psychological Diagnostic Report and does not contain this information. It appears

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

indicate Plaintiff performed numerous supervised therapeutic exercises, along with home exercise program, in order to improve his left hip range of motion without impingement and to improve his strength; and that as of December 2017, he had attended 37 physical therapy appointments and was approved for more at that time, as his therapist noted his goals were not yet met and he required additional therapy "in attempts to regain full left hip ROM and strength to maximize his function s/p traumatic injury and surgical repair of his left hip." Tr. 1026-27.

While the ALJ focuses on one report by a physical therapy assistant that Plaintiff reported some jogging, citing it more than once, it is not clear where Plaintiff performed this activity or for how long, and objective findings from the same visit include evidence that he continued to have reduced strength in his left lower extremity. Tr. 1044-45. At the next physical therapy visit, February 1, 2018, he reported getting up from the floor continued to be difficult due to hip pain, and that "putting on his left shoe is still difficult." *Id*. While Plaintiff self-reported he would have "a little difficulty" running on uneven or even ground in March 2018, he also reported he continued to have "quite a bit of difficulty" getting in and out of the bath, putting on shoes and socks, and "moderate difficulty" with hobbies and recreational activities, his ability to roll over in bed, and in his ability to stand or sit for one hour. Tr. 1049. Records from a visit with his treating medical rehabilitation specialist, Dr. Joon, in January 2018 show he continued to have issues with pain sitting or standing for more than 15 minutes and that while he had improvement in range of motion he was not yet back to baseline. Tr. 1088. Plaintiff's participation in physical therapy or home exercise program is not inconsistent with his symptom claims.

---

the ALJ was referencing the November 2017 physical therapy report at AR 21F/1, which is at Tr. 1023.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17

The ALJ also discounted Plaintiff's December 2018 report of stabbing shoulder pain because his pain was mild at the time of the appointment. Tr. 24 (citing Tr. 1419). Notably, Plaintiff alleged his disability ended that month, and records also show his report that this pain had been "occurring . . . since March 2017 accident"; records from a visit a month earlier, in November 2018, reveal his provider explained his pain would flare up, was "currently not flared [only] 4/10 pain – last flare was a couple weeks ago (when initially made the appointment)." Tr. 1421. The ALJ selectively cited to records that tended to support his conclusions, while the longitudinal record showed more mixed findings, including reports of pain that interfered with Plaintiff's attempts to return to work. The ALJ's conclusion that Plaintiff's statements about pain were inconsistent with the longitudinal evidence is not supported by substantial evidence.

The ALJ also concluded that "other discrepancies in the record detracted from the reliability of Plaintiff's self-report," and the ALJ discounted Plaintiff's symptom reports in part because Plaintiff "has repeatedly expressed a desire to return to his prior work as a truck driver, rather than engage in any significant efforts to look for other work." Tr. 25. The ALJ noted Plaintiff "returned to an employer for light duty, but the employer did not have much light work for him and he stopped work." *Id.* The ALJ also noted Plaintiff was able to pass his personal driver's test and returned to other work, at Habitat for Humanity, by 2020. *Id.*

Plaintiff contends the ALJ improperly discredited Plaintiff for a strong work ethic and desire to return to his profession. ECF No. 11 at 11. Defendant does not defend this finding. ECF No. 15 at 7-9. The ALJ also did not take Plaintiff's testimony into consideration, finding only that Plaintiff's employer did not have much light duty work for him, so Plaintiff stopped working. Tr. 25. Plaintiff testified, however, that he attempted several lighter jobs with his former employer,

including cleaning and organizing toolboxes; and that while he was only released to four hour shifts at first, he was taking up to 10 small breaks during the four hours to stretch, sit, or stand, and had difficulty completing a four-hour shift due to pain. Tr. 160-62. The ALJ also discounted Plaintiff's report that lifting and heavy activity caused him pain, concluding "yet he was still weed eating despite any aggravations." Tr. 25 (citing Tr. 1408, 1552, 1564). In 2018, however, Plaintiff testified that when his former employer gave him such work, his back hurt after about 15 minutes and he had to leave work early. Tr. 161. The ALJ also cited to records closer to and after his requested closed period of disability. Tr. 25. Records from physical therapy in January 2019, for example, show he reported he tried to return to work as a mechanic late in 2018 but "then they had him weed eating," and that he was still having difficulty at that time working due to pain. Tr. 1408. The ALJ cites records from August 2018, showing significant myofascial pain and carpal tunnel syndrome "likely aggravated by activities such as weed eating," but at the same visit the provider also noted Plaintiff was "not currently working," his pain was rated 5 of 10, "but it can be higher," and the provider noted that any "sitting, standing or bending or shoulder rotating can make the symptoms worse." Tr. 1552. In November 2018, Dr. Joon noted his attempts to return to work, but also that he had "increased shoulder pain and back pain" and that his employer gave him work including "weed-eater activity . . . [that] caused significant pain shortly after he returned to work, and "he had to stop working [after] about a month" at that time. Tr. 1564. Notably, he was still restricted to part-time work with breaks as needed at that time due to pain and cognitive deficit. *See, e.g.*, Tr. 1559.

Additionally, in 2020 Plaintiff testified that even when he found lighter work with Habitat for Humanity, he was still only able to work part time with accommodations, including a supervisor that stayed with him throughout the day.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 19

Tr. 193.  He testified he still took frequent breaks due to pain, still forgot things even though he had worked there for a year, and that he frequently shifted position from siting to standing as needed.  Tr. 193-95.

The ALJ's conclusion Plaintiff's desire to return to work and attempts to find lighter work with a former employer during the period at issue detracted from the reliability of his self-report is not supported by substantial evidence.  This was also not a clear and convincing reason to discount Plaintiff's symptom reports.

### 3.    *Activities.*

A claimant's daily activities may support an adverse credibility finding if the claimant's activities contradict his other testimony.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

Here, the ALJ pointed to Plaintiff's general ability to pay bills, perform daily activities, and do chores without assistance, and his ability to go out into the community, care for his children, drive, exercise, and attend appointments as inconsistent with his allegations.  Tr. 22-25.  The ALJ also found by January 2018, Plaintiff "asserted he was doing well at home, able to do all of his activities of daily living, and able to handle medical appointments without difficulty."  Tr. 23 (citing Tr. 1019).  None of these activities are inconsistent with Plaintiff's allegations of chronic pain and other symptoms preventing him from working a

full-time job during the period at issue. The Ninth Circuit has repeatedly found that the ability to perform these kinds of activities is not inconsistent with the inability to work:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison*, 759 F.3d at 1016.

Further, while the ALJ found his ability to care for his children, including the ability to lift–but not carry–his young child, inconsistent with his allegations, the Court finds no inconsistency. Further, if such care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo*, 871 F.3d at 675-76. The ALJ's conclusion that Plaintiff's activities were inconsistent with his symptom claims is not supported by substantial evidence.

### 4.    *Limited Treatment/Improvement with Treatment.*

The ALJ found that Plaintiff's treatment did not support the level of impairment he alleged and that he improved with treatment. Tr. 23. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). Additionally, the

effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ found Plaintiff's treatment did not support the level of limitation he alleged.  Tr. 23.  As discussed *supra*, however, the ALJ failed to adequately discuss the extent of Plaintiff's injuries and treatment in the decision. The ALJ also found improvement, noting Plaintiff participated in physical therapy that showed that he was able to tolerate progressively increased exercises with observable improvement.  *Id*. (citing Tr. 1023-64).  The ALJ noted "sitting and standing was noted to cause pain when prolonged, but his hip range of motion was improved to full range of motion except for hip flexion which was only minimally impaired."  *Id*. (citing Tr. 1018).  However, at that time (January 2018) his providers also noted sitting and standing for more than 15 minutes caused pain, and he was referred for a neuropsychological evaluation due to persistent cognitive deficit.  Tr. 1029.  In February 2018, Dr. Joon explained that due to "severe traumatic brain injury with multiple intracranial hemorrhages, skull fractures, and left eye blindness as well as left hip fracture," he has "a resultant cognitive deficit as well as difficulty walking and doing daily activities."  Tr. 1021.  She noted at that time he had not been able to work "due to persistent deficits," but that he "may be able to return to light duty work or part-time work and then gradually increase his work hours to full time in next six months."  *Id*.

Plaintiff contends that he did improve, as expected, from catastrophic injuries with treatment, but he remained unable to work at SGA levels during the period at issue.  ECF No. 11 at 8.  As of June 2018, Dr. Joon explained Plaintiff was still limited to part time light work, noting his condition was permanent but

"the degree of severity continues to improve and may change in 6-12 months;" and in August 2018, Dr. Joon released him to work with accommodations including part-time hours and as needed breaks. Tr. 1110-11, 1559. As of April 2019, after Plaintiff returned to SGA level work, Dr. Joon explained that Plaintiff "has made significant gain [and] will likely have some improvement. However, he will have permanent residual pain and cognitive deficit as well as left eye blindness." Tr. 1429.

The ALJ's conclusion that Plaintiff's treatment did not support the level of impairment he alleged and that he improved with treatment to the point he was able to work during the period at issue is not supported by substantial evidence. Along with the errors discussed above, overall, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom allegations.

### B.    **Medical Opinions.**

Plaintiff alleges the ALJ erred by not properly assessing the medical opinions. ECF No. 11 at 12-20.

For claims filed on or after March 27, 2017, pursuant to the applicable regulations, the ALJ does not give any specific evidentiary weight to medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. §§ 404.1520c(c)(1)-(5),

416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain how the ALJ considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit has addressed the issue of whether the new regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation

supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id*. at 792.

### 1. ***Dr. Koukol and Dr. Davenport.***

In October 2017, the state agency physical consultant, Dr. Koukol, reviewed Plaintiff's records and rendered an opinion of Plaintiff's level of functioning. Tr. 219-22. Dr. Koukol opined Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and could stand and walk for a total of four hours in an eight-hour workday and sit about six hours in an eight-hour workday; he could occasionally climb ramps and stairs, and occasionally kneel, crouch, and crawl; he could never climb ladders, ropes, or scaffolds, but he could frequently balance and stoop. Tr. 220. Dr Koukol explained exertional limitations were due to left hip fracture and vision loss. *Id*. In terms of visual limitations, Dr. Koukol opined on the left Plaintiff had limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision due to left eye vision loss. Tr. 221. He opined Plaintiff should avoid concentrated exposure to wetness and vibration, fumes, dusts, gases, poor ventilation, and hazards. Tr. 221-22. He noted environmental limitations were due to history of TBI with subdural hemorrhage, left eye vision loss, and left hip fracture. Tr. 222. In January 2018, Dr. Davenport affirmed Dr. Koukol's opinion. Tr. 255-57. The ALJ found the opinions of the state agency consultants persuasive.

The ALJ found that the limitation to four hours standing and walking was supported by records of Plaintiff's hip injury following his accident, noting "greater restriction consistent with complaints of pain with prolonged sitting, standing, and walking." Tr. 25. The ALJ also found "DDS did not provide specific assessment of left eye visual limitations, despite significant vision loss, the claimant had adequate vision to drive and do daily activities." *Id*. Plaintiff contends the ALJ erred because he failed to address the factors of consistency and

supportability as required by the regulations, and also failed to provide any explanation for not putting relevant portions of the state agency opinions into the RFC, including the limitation to four hours of standing and walking and additional visual limitations; Plaintiff contends that such limitations eliminate at least one of the jobs at step five.  ECF No. 11 at 17-18.

The Court finds the ALJ failed to adequately address the factors of supportability and consistency in assessing the state agency opinion. Supportability and consistency are the most important factors an ALJ must consider when determining how persuasive a medical opinion is, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ provided almost no analysis of the opinions, and the analysis he did provide explains the limitation to four hours standing and walking is persuasive because it is "supported by records of [Plaintiff's] hip injury following his accident."  Tr. 25. Despite finding the limitation to standing and walking four hours in an eight-hour day supported, however, the ALJ failed to explain why he did not include this limitation in the RFC.

Along with errors discussed *supra*, in relation to Plaintiff's subjective complaints, the ALJ also failed to adequately discuss the factors required by the regulations in assessing medical opinion evidence, and also failed to account for a limitation he found persuasive in the RFC.  Notably, this case was previously remanded by the Appeals Council in part because the ALJ failed to evaluate prior administrative medical findings pursuant to the provisions of the new medical rules.  *See* Tr. 305-06.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 26

### 2. *Dr. Joon.*

Cherry Joon, MD, provided multiple reports with her opinion on Plaintiff's level of functioning. In a letter dated August 8, 2017, Dr. Joon reported she was Plaintiff's rehabilitation medicine provider for "polytrauma sustained on March 15, 2017." Tr. 957. Dr Joon explained "his injuries include severe traumatic brain injury with multiple intracranial hemorrhages and skull fracture and left eye blindness," and she noted he also "follows up with other physicians for his left acetabulum fracture and other injuries." *Id*. She opined "he has resultant difficulty with cognitive function, walking, and daily activities. He has not been able to work since his injury." *Id*. She opined "I anticipate that he may be able to return to light duty work part-time and gradually increase his hours to full-time in next 6-12 months." *Id*.

In August 2017, Dr. Joon completed a physical functional evaluation on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning. Tr. 1105-07. She explained Plaintiff had a "traumatic brain injury with multiple hemorrhages and skull fracture leading to cognitive impairment, balance impairment, left eye vision loss due to l[eft] orbital wall fracture and nerve (optic) injury," along with "left acetabular fracture requiring surgical correction, leading to difficulty with walking." Tr. 1105. She explained his treatment included hospitalization from March 15, 2017 through April 6, 2017 and that he "required multiple surgeries and inpatient rehabilitation for [his] injuries." *Id*. Dr. Joon opined Plaintiff "should be given breaks (scheduled and as needed) for his cognitive impairment" and that "he is unable to go up ladders or go up on heights due to balance impairment" and that "his left eye vision loss is permanent and should be given accommodation." Tr. 1106. She opined he has "left hip weakness persistent from fracture with limited [range of motion]." *Id*. She opined he has marked limitation, defined as "very significant interference with the ability

to perform one or more work related activities," in his ability to sit, stand, walk, lift, carry, stoop and crouch due to left hip/acetabulum fracture. *Id*. She opined he had moderate limitation, defined as "significant interference with the ability to perform one or more basic work activities," in his ability to see due to left orbital wall fracture and optic nerve injury, and moderate limitation in his ability to communicate due to TBI. *Id*. She opined he was capable of performing sedentary work, defined as able to lift 10 pounds maximum, frequently lift and carry lightweight articles, and walk or stand only for brief periods" and that these work limitations would persist with treatment for 6-12 months. Tr. 1107.

Again, in a letter dated February 7, 2018, Dr. Joon reported she was Plaintiff's rehabilitation medicine provider for "polytrauma sustained on 3/15/2017 from a motor vehicle collision . . . he sustained severe traumatic brain injury with multiple intracranial hemorrhages, skull fractures, and left eye blindness as well as left hip fracture." Tr. 1021. She explained he had "a resultant cognitive deficit as well as difficulty walking and doing daily activities. He has not been able to work since injury due to persistent deficits." *Id*. She noted he continued to improve with current therapy and "I anticipate that he may be able to return to light duty work or part-time work and then gradually increase his work hours to full time in [the] next six months." *Id.*

On June 29, 2018, Dr. Joon completed a documentation form for medical or disability condition on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning. Tr. 1110-12. She opined his condition limited his ability to work, look for work or prepare for work, and that he was limited in his ability to "stand or sit for long periods of time. Walk for long period [of] time. Bend over, crawl, or go up/down on ladder[s]"; she explained he "[h]as cognitive deficit leading to slowed processing speed and decreased attention as well as memory, leading to limitations in ability to recall instruction, advocating for

himself, answer questions quickly, needs repeated direction." Tr. 1110. She indicated he could perform light work but that he should be limited to 11-20 hours of participation a week, noting his "hours may be increased as he tolerates." Tr. 1110-11. She opined his condition was permanent but the "degree of severity continues to improve and may change in 6-12 months." Tr. 1111.

In August 2018, Dr. Joon and Barbara Beach, Plaintiff's rehabilitation counselor, submitted a letter to Plaintiff's employer. Tr. 1114, 1559; *see* Tr. 563. Dr. Joon noted Plaintiff had been under her care since his accident March 15, 2017, and that "following his injury he continues to have difficulty sitting, standing and walking, bending over or crawling for long periods of time or going up and down ladders due to his hip injury." Tr. 1114. She opined he could lift 20 pounds and carry 10 pounds "at this time." *Id*. She noted he underwent cognitive testing and based on the results "we expect that: [h]e will be able to learn and comprehend new tasks. He will be able to track/remember tasks (using a notebook as backup memory system as needed) and communicate in a work setting." *Id*. She opined that "if is expected he could profit from training but would do best with hands-on, small group training rather than book work/classroom setting." *Id*. Dr. Joon opined "in regard to the specific job of driving trucks, exercise of caution would be recommended; certainly though re-evaluation of truck driving skills is indicated." And that "if he is cleared, shorter runs, possibly initially with a coworker along, would be recommended." *Id*. She noted he was able to pass an evaluation through DOL for his regular license. *Id*. Dr. Joon explained "at this time, I am releasing him to return to work" with "the following accommodation to ensure a safe return," and recommended "he start at 4 hours per day for 2-3 weeks and then gradually increase his work hours, 1-2 hours per day every two weeks as he tolerates" and "he should only drive within your local area rather than driving to

Seattle as he did in the past" and "he should also take scheduled and as needed breaks." *Id.*

In November 2018, Dr. Joon completed a Documentation Request Form on behalf of DSHS. Tr. 1560-62. She opined Plaintiff was restricted to 11-20 hours a week of sedentary work. Tr. 1560-61.

In April 2019, Dr. Joon completed a medical report form on Plaintiff's behalf. Tr. 1428-29. She reported she treated Plaintiff July 20, 2017 through November 2019. Tr. 1428. She reported relevant clinical findings included: "fractures and bleeding demonstrated on multiple imaging studies (CT head, x-ray C-spine, pelvis, shoulder). Neuropsychological evaluation in March 18 with slowed processing speed and deficit with complex attention." *Id.* She opined Plaintiff should lie down during day "intermittently when his back pain or hip pain flares up" explaining, "[m]ost of the time, he does not have to lie down. When it flares, can be down 30 min or longer." *Id.* She noted he "underwent multiple surgeries for his fractures (acetabular, left orbital wall); underwent [occupational therapy] and speech therapy. Also requires PT still but at decreased frequency. Prior to outpatient therapy, he underwent acute inpatient rehabilitation." *Id.* She indicated his conditions were still likely to cause pain, explaining "[h]e has had multiple fractures that required surgery. He gets intermittent flare up of his pain depending on physical activities, most with repetitive motion." *Id.* She explained that "[h]e has made significant gain. He will likely . . . have some improvement. However, he will have permanent residual pain and cognitive deficit as well as left eye blindness." Tr. 1429. She noted at that time work would not cause him to deteriorate, although she opined that "a position will need to be not physical in order for it to not cause any deterioration." *Id.* She opined at that time that Plaintiff would likely miss up to 4 days of work a month, clarifying that "depending on [his] pain level, he may need to take time off for repeat therapies, 1-

2 times per week for 6-8 weeks.  If pain does not flare up, he will not need to miss more than 1-2 days a month or less." *Id*.

The ALJ found Dr. Joon's opinions partially persuasive.  Tr. 26-27.  Plaintiff contends Dr. Joon's opinions limiting Plaintiff to part-time work with breaks as needed and missing work are consistent with disability and the ALJ failed to provide legally sufficient reasons for rejecting them.  ECF No 11 at 13-17.

As the case is being remanded for immediate benefits on other grounds, the Court takes notice of the multiple reports of Dr. Joon detailing the extent of Plaintiff's injuries, along with her repeat restriction to part-time work with breaks as needed during the period at issue, but declines to otherwise address these opinions.

### 3.    *Other Opinions.*

Plaintiff also challenged the ALJ's analysis of other medical opinions.  ECF No. 11 at 18-20.  As the case is being remanded for immediate benefits, the Court declines to address the other medical opinions.

## C.    Step Five Findings.

Plaintiff contends the ALJ failed to meet his step five burden.  ECF No. 11 at 20-21.  As the case is being remanded for immediate benefits on other grounds, the Court also declines to address this issue.

## D.    Remedy.

Plaintiff urges this Court to remand for an immediate award of benefits.  ECF No. 11 at 12.  "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The Ninth Circuit, however, has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, the Court finds that each of the credit-as-true factors is satisfied and that remand for the calculation and award of benefits for the requested closed period of disability is warranted.  As to the first element, the record has been fully developed during the period at issue and there is no indication further proceedings would serve any purpose.  Administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, or there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039.

Additionally, Plaintiff has requested a closed period of disability, from March 15, 2017 through December 31, 2018, and the record is fully developed during the requested period.  Given the case has already been remanded once by the Appeals Council and given the ALJ's failure to properly consider the evidence of record on two occasions, the Court declines to provide the Administration

1
2
3

another chance to improperly deny the claim.  The Court finds the record is fully developed during the period at issue, March 15, 2017 through December 31, 2018, and further proceedings would not serve a useful purpose.

4
5
6
7
8
9
10

As discussed *supra*, the ALJ also failed to provide legally sufficient reasons, supported by substantial evidence, to reject Plaintiff's testimony/symptom claims. Therefore, the second prong of the credit-as-true rule is met.  The third prong of the credit-as-true rule is satisfied because if Plaintiff's statements were credited as true, the ALJ would be required to find Plaintiff disabled for the entire relevant period, which in this case is a requested closed period of disability from March 15, 2017 through December 31, 2018.

11
12
13
14
15
16
17

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff is disabled during the period at issue. *See Garrison*, 759 F.3d at 1021.  As discussed *supra*, there is evidence of brain injury with residual cognitive deficit, which the ALJ failed to adequately discuss, along with residuals of polytrauma from a serious accident on Plaintiff's alleged onset date, including pain and difficulty standing, walking, and sitting.

18
19
20
21
22
23
24
25
26
27
28

The Court notes that the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application.  *Treichler*, 775 F.3d at 1100 (internal citations omitted).  Here, Plaintiff was seriously injured, has a young family, made significant efforts at rehabilitation and succeeded in a return to work at SGA levels, and he has waited over five years for benefits.  Considering the delay from the date of the application, harmful error by the ALJ, including failure to discuss relevant evidence supporting disability along with some misconstrual of evidence in support of nondisability, all described *supra*, it is appropriate in this

case for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

## VII.   CONCLUSION

The ALJ's decision is not supported by substantial evidence and not free of harmful legal error.

Accordingly, **IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2.     Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3.     The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff **REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.**

4.     The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 29, 2023.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE